UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIAMOND-DONNELL D. BLAIR, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Case No. 4:23-cv-286-MTS |
| ALLEN HUGHES, *et al.*, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Defendants Allen Hughes, Michael Miller, Jason Lewis, and Elizabeth Henson's Motion for Judgment on the Pleadings, Doc. [21]. For the reasons set forth herein, the Court will grant the Motion.

**I.    Background**

Plaintiff Diamond-Donnell Blair is an African American male currently incarcerated in the Missouri Department of Corrections for life plus fifty years. Doc. [1] ¶ 1-2. In May 2022, Plaintiff completed and submitted for publication a novel entitled *Perfect*. *Id.* ¶ 3. In June 2022, Plaintiff's fiancée, Ms. Ashley Mendez, ordered a copy of the novel for Blair to read and possess. *Id.* ¶ 7. Amazon, the publisher, delivered the novel to the Eastern Reception Diagnostic Correctional Center ("ERDCC"), where Blair was incarcerated,[1] but the novel was allegedly flagged by the ERDCC's mailroom clerk, Defendant Elizabeth Henson. *Id.* ¶¶ 9, 18. The novel was withheld from Plaintiff for an extended period of time—somewhere around thirty to forty days—and later censored by the ERDCC, pursuant to the "Censorship Policy of the Missouri Department of Corrections." *Id.* ¶¶ 20, 44. Plaintiff alleges this censorship deprived him of constitutional rights and the right to freely express himself to other prisoners who may want to read the novel. *Id.* ¶ 129.

---

[1] Plaintiff is now incarcerated at the Crossroads Correctional Center, located in Cameron, Missouri.

The Missouri Department of Corrections Censorship Policy is designated as IS 13-1.2 Censorship Procedure ("the Policy"). *Id.* ¶ 28.  The Policy allows mail to be censored if it "depicts, describes, or encourages activities which may lead to criminal disruption." *Id.* ¶ 30.  Additionally, censorship is also permitted if the materials "contain[] nude pictures or sexually explicit content." *Id.* ¶ 31.  Ultimately, Defendant Henson informed Plaintiff's fiancée that *Perfect* was censored because the novel contains "sexual inappropriateness, violence, and pictures." *Id.* ¶¶ 44, 48.

On July 22, 2022, Plaintiff filed an Internal Resolution Request ("IRR") as a result of the censored novel and as part of the grievance process. *Id.* ¶¶ 55-56.  Defendants' response to the IRR clarified that the novel was censored because it "contained inappropriate sexual behavior, sexually explicit material and pictures." *Id.* ¶ 88.  However, Plaintiff states that the novel "does not, did not ever, contain inappropriate sexual behavior, sexually explicit materials and pictures." *Id.* ¶¶ 8, 101, 135.  It is Plaintiff's contention that Defendants withheld notice for several weeks, that, contrary to Policy procedure, Defendant Henson made the decision to censor the novel in violation of the Policy, that Henson fabricated the novel containing sexually explicit content, and that Defendants falsified the reason for denying Plaintiff access to his novel. *Id.* ¶¶ 51-52, 77, 124.

On March 7, 2023, Plaintiff filed a Complaint alleging, among other claims, violations of his rights under the First and Fourteenth Amendments and conspiracy by the Defendants.  As a measure of relief, Plaintiff seeks compensatory and punitive damages as relief for such alleged violations.  On December 1, 2023, Defendants moved for Judgment on the Pleadings, Doc. [21].

II. **Legal Standard**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings."  A court should grant a motion for judgment on the pleadings "if, assuming as true all facts pleaded by the nonmoving party and affording it all reasonable inferences, no material issue of fact remains, and the moving party is entitled to judgment as a matter

of law." *Thach v. Tiger Corp.*, 609 F.3d 955, 957 (8th Cir. 2010) (citing *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008)). In assessing a Rule 12(c) motion, courts apply the same standard as is applied to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (citing *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009)).

Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gallagher*, 699 F.3d at 1016 (quoting *Iqbal*, 556 U.S. at 678). The Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). However, since Plaintiff is *pro se*, the Court gives the benefit of a liberal construction. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996).

**III.   Discussion**

1. *Perfect* is "necessarily embraced" by the Complaint.

To provide context, Defendants have included a sample of the censored novel, *Perfect*, through an Amazon link within their Memorandum in Support of the Motion for Judgment on the Pleadings. Doc. [22]. This sample is "necessarily embraced" by the pleadings and will be considered by the Court.

Courts generally may not consider materials outside the pleadings in deciding whether to grant a motion for judgment on the pleadings. *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013).

3

However, courts may consider "some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" *Id.* "In general, materials embraced by the complaint include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)). Stated more comprehensively:

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity in unquestioned;" without converting the motion into one for summary judgment.

*Zean*, 858 F.3d at 526 (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). Here, Defendants have provided a link to an Amazon webpage for a novel entitled *Perfect*. Doc. [22] at 5 n.2.[2]  Defendants clarify that the linked webpage "lists the author as 'Diamond-Donnell Blair'" and "provides a sample of *Perfect*." *Id.* at 5. Neither party has questioned the authenticity of the Amazon link containing a sample to the novel *Perfect*, and *Perfect* is "necessarily embraced" by the pleadings because it is both at the heart of Plaintiff's claim—seeking relief for censorship of the novel—and is referenced throughout the Complaint. *See, e.g.,* Doc. [1] ¶¶ 3, 17, 20. Therefore, the sample will be considered by the Court.

2. <u>Defendants' censorship of *Perfect* was reasonably related to a legitimate and neutral penological interest.</u>

The censorship of Plaintiff's novel did not amount to a constitutional violation. Due to the nature of correctional facilities, "prison officials may lawfully censor prison mail that is detrimental to the security, good order, and discipline of the institution." *Kaden v. Slykhuis*, 651 F.3d 966, 968

---

[2] Defendants' Motion for Judgment on the Pleadings contains the following link: "Diamond-Donnell Blair, *Perfect* https://www.amazon.com/Perfect-Diamond-Donnell-Blairebook/dp/B0BLTDL9ZN/ref=sr_1_3?qid=1701189732&refinements=p_27%3AA.+Donnell&s=books&sr=1-3."

4

(8th Cir. 2011). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *accord Beard v. Banks*, 548 U.S. 521, 528 (2006) (explaining that "restrictive prison regulations are permissible" where they are "'reasonably related' to legitimate penological interests"). "The Supreme Court has articulated a two-step, four-factor test to determine when a regulation that impinges on inmates' constitutional rights is 'reasonably related to legitimate penological interests.'" *See Sisney v. Kaemingk*, 15 F.4th 1181, 1190 (8th Cir. 2021).

The factors relevant in determining whether a regulation is reasonable include: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether alternatives exist to accommodate the prisoner at a *de minimis* cost. *Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015) (quoting *Turner*, 482 U.S. at 89-91). The first factor operates as a threshold condition that the regulation must satisfy to pass constitutional muster, and assuming the condition is satisfied, the court must balance the remaining factors. *Sisney*, 15 F.4th at 1190 (citing *Amatel v. Reno*, 156 F.3d 192, 196 (D.C. Cir. 1998)).

Here, there is a "valid, rational connection" between the Policy and the government interest put forward to justify it. The Missouri Department of Corrections has implemented a Censorship Procedure, codified as IS13-1.2. Doc. [1] ¶ 28. The Policy states that a prisoner's mail may be censored if it "depicts, describes or encourages activities which may lead to criminal violence or group disruption." *Id.* ¶ 30. Censorship is also permitted for materials containing "nude pictures" or

5

"sexually explicit content."[3]  *Id.* ¶ 31.  Defendants cited reasoning for censoring the novel was to prevent "activities which may lead to criminal violence or group disruption."  *Id.* ¶ 74.  Plaintiff concedes that the Policy "permits censorship" if the material contains "sexually explicit content," but Plaintiff alleges that *Perfect* "does not, did not ever, contain inappropriate sexual behavior, sexually explicit materials and pictures."  *Id.* ¶¶ 31-32.  Rather, it is Plaintiff's contention that Defendants concocted this "falsehood" to "deliberately censor and ban" *Perfect*.  *Id.* ¶ 101.  However, a review of *Perfect*'s sample shows that the novel does, in fact, contain sexually explicit material and inappropriate sexual behavior—it depicts the rape of a minor.[4]  *See id.* ¶ 31.

The U.S. Court of Appeals for the Eighth Circuit has found that a regulation allowing for censorship of incoming items that are likely to incite violence is related to the institutional needs of maintaining a secure environment within the prison.  *See Murchison*, 779 F.3d at 887; *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 986 (8th Cir. 2004); *Dean v. Bowersox*, 325 F. App'x 470, 472 (8th Cir. 2009); *Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993) (explaining that "security is clearly a valid penological interest").  It has also been determined that where "prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral' in the technical sense" used in *Turner*, 482 U.S. 78.  *See Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).  And the Court must defer to "prison officials' views of what may be inflammatory."  *Murchison*, 779 F.3d at 887.  Therefore, because *Perfect* contained sexually

---

[3] The Eighth Circuit has defined "sexually explicit" to include "written and/or pictorial, graphic depiction of actual or simulated sexual acts, including but not limited to sexual intercourse, oral sex or masturbation."  *Sisney*, 15 F.4h at 1188.
[4] Plaintiff also argues that Defendants' censorship of *Perfect* was not neutral because they allowed other books which contained "strong violent content," including rape, gun violence, and derogatory words, to be accessed within the prison library system.  Doc. [1] ¶¶ 136, 140-49; Doc. [27] at 5-6.  However, the Court must give "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *see also Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989) (explaining that "a regulation which gives prison authorities broad discretion is appropriate").

explicit material, and the Policy serves to promote the security of inmates and prison personnel, the censorship of *Perfect* was reasonably related to a legitimate and neutral penological interest.

The remaining factors also fail to exhibit a constitutional violation. The second factor weighs in favor of the constitutionality of a prison's regulation of incoming mail "if the regulation 'permit[s] a broad range of publications to be sent, received, and read.'" *See Sisney*, 15 F.4th at 1191. Here, the Policy only applies to materials which contain "nude pictures or sexually explicit content." Doc. [1] ¶ 31. As such, the regulation necessarily allows a broad range of alternative items—those materials not containing sexually explicit content—to be received.

The third factor also weighs in favor of the constitutionality of a regulation censoring material that "would inhibit some inmates' rehabilitation and that 'would likely be disseminated' throughout the prison." *Sisney*, 15 F.4th at 1191 (quoting *Dawson*, 986 F.2d at 262). Here, Defendants censored the book for its potential to cause "group disruption." Doc. [1] ¶ 74. Although the novel was mailed solely to Plaintiff, Plaintiff stated that this censorship "deprive[d] [him] of his right to freely express himself to other prisoners"—a sentiment signaling dissemination of the novel throughout the prison—which, in turn, may then cause criminal disruption. *See, e.g., Amatel*, 156 F.3d at 201 (explaining that "the reality is that prisoners are likely to pass pornographic materials about," and "[e]ven if pornography could be directed only to those not likely to be adversely affected, it could find its way to others, interfering with their rehabilitation and increasing threats to safety").

Finally, for the fourth factor, "alternatives, such as page-by-page censorship and monitored reading rooms are not 'obvious, easy alternatives.'" *See Sisney*, 15 F.4th at 1193 (quoting *Thornburgh*, 490 U.S. at 418-19). To satisfy this factor, "prison officials do not have to set up and then shoot down every conceivable alternative method," but "if an inmate can point to an alternative that fully accommodates the prisoner's rights at *de minimis* costs to valid penological interests, a court may consider that as evidence the regulation does not satisfy the reasonable relationship standard."

7

*Turner*, 482 U.S. at 91. A careful review of the pleadings fails to uncover any alternative presented by Plaintiff. Therefore, the censoring of *Perfect* under the Policy was reasonably related to a legitimate and neutral penological interest, and ultimately, was valid.[5]

### 3. No violation of due process is present because Plaintiff had an opportunity to be heard.

The Fourteenth Amendment provides, in part, that no state shall "deprive any person of life, liberty, or property without due process of the law." U.S. Const. amend. XIV. For procedural due process claims, there is a two-step analysis: first, "whether there exists a liberty or property interest of which a person has been deprived," and second, if a liberty interest exists, "whether the procedures followed by the State were constitutionally sufficient." *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2017).

For the reasons already stated, the Court has determined that the censoring of *Perfect* did not amount to a constitutional violation because the censorship was reasonably related to a legitimate and neutral penological interest. However, "[i]nmates do have a right to procedural due process . . . when their mail is rejected." *See Bonner v. Outlaw*, 552 F.3d 673, 675-76 (8th Cir. 2009). "It is the inmate's interest in 'uncensored communication' that is the liberty interest protected by the due process clause, regardless of whether that communication occurs in the form of a letter, package, newspaper, magazine, etc." *Id.* at 677. These minimum safeguards consist of "a requirement that an inmate be notified of the rejection and have a reasonable opportunity to protest the decision." *Id.* at 676. When contesting the satisfaction of such safeguards, "a prisoner who files a suit claiming that he or she has received inadequate notice has the burden of proving that the prison's procedures fall

---

[5] Plaintiff also contends that "the Defendants conspired to censor and/or ban the novel Perfect because it was written by Blair." Doc. [27] at 5. However, "[a]bsent a constitutional violation, there is no actionable conspiracy claim." *See Blair v. Hughes*, 4:23-cv-286-MTS, 2023 WL 4261517, at *14 (E.D. Mo. June 29, 2023) (quoting *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018)). Plaintiff also contends that Defendants violated its own Policy, but even if it can be shown that Defendant Henson violated prison procedure as alleged, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003).

8

short of the minimum required by the Constitution." *Nunley v. Dep't of Justice*, 425 F.3d 1132, 1138 (8th Cir. 2005).

Here, Plaintiff contends that Defendant Henson, the mailroom clerk, improperly censored *Perfect* and then failed to provide Plaintiff with notice for over a month. Doc. [1] ¶¶ 48, 51, 80, 117, 124. Specifically, Plaintiff contends that he was entitled to "prompt notice (written) of the reasons for rejection," pursuant to "IS13-1.2," but that he did not receive notice until "several weeks after the book was rejected." *Id.* ¶¶ 122-24. However, Plaintiff does concede that notice was provided. *Id.* ¶ 124. Even *if* this delayed notice amounted to a procedural due process violation, Plaintiff only contends that earlier notice "would have allowed [him] to contest the censor's decision sooner" than July 22, 2022—the date Plaintiff formally filed his Informal Resolution Request grievance. *Id.* ¶¶ 55, 123. Therefore, Plaintiff was still afforded constitutionally sufficient notice and an opportunity to be heard. The Eighth Circuit has found the argument of delayed notice as insufficient for a procedural due process violation. *See Knight v. Lombardi*, 952 F.2d 177, 179 (8th Cir. 1991) (explaining that "although the failure to promptly notify [plaintiff] of the seizures was arguably a procedural due process violation," the procedural due process claim was properly dismissed because "[plaintiff did] not claim he was denied an opportunity to file a grievance to protest the seizure"). Therefore, Plaintiff has failed to demonstrate that he was not afforded minimum procedural safeguards.

   4. <u>Defendants are entitled to qualified immunity because Plaintiff has failed to show a constitutional violation.</u>

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To resolve cases where the defense of qualified

immunity is raised, the Court must determine (1) whether the facts alleged by a plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of a defendant's alleged misconduct. *Id.* at 232. "If the answer to either question is 'No,' the defendant is entitled to qualified immunity." *See McKay v. City of St. Louis*, 4:15-cv-1315-JAR, 2019 WL 1436972, at *4 (E.D. Mo. Mar. 31, 2019). Here, Plaintiff has failed to establish a violation of a constitutional right. Therefore, Defendants are entitled to qualified immunity.[6]

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Allen Hughes, Michael Miller, Jason Lewis, and Elizabeth Henson's Motion for Judgment on the Pleadings, Doc. [21], is **GRANTED**.

A separate Judgment will be entered herewith.

Dated this 24th of May 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[6] Finally, as a measure of relief, Plaintiff seeks "compensatory damages: $10,000 from each individual defendant." Doc. [1] at 21. However, "[t]he PLRA states '[n]o [f]ederal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.' . . . [W]e read [§] 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners." *See Royal v. Kautzky*, 375 F.3d 720, 722-23 (8th Cir. 2004); *see also McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018). Here, Plaintiff has failed to allege a physical injury; therefore, compensatory damages are not an available remedy.